IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **MICHAEL CONNOLLY,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL NO. 1:CV-07-1681** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **Warden FRANKLIN TENNIS,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff, Michael Connolly, an inmate at the Rockview State Correctional Institution ("SCI-Rockview") in Bellefonte, Pennsylvania, initiated this action *pro se* by filing a civil rights complaint pursuant to the provisions set forth in 42 U.S.C. § 1983.  Plaintiff subsequently filed an amended complaint (Doc. 15) in which he names two categories of SCI-Rockview employees as defendants: Valerie Senko, physician's assistant ("P.A."); and Kevin Burke, M.D., psychiatrist ("the Medical Defendants"); and Franklin Tennis, warden; Richard Ellers, health care supervisor; and Dobson, corrections officer ("the Corrections Defendants").

In his amended complaint, Plaintiff alleges that he received inadequate medical care, that he was retaliated against for filing grievances related to medical care, and that he did not obtain an adequate response to his grievances.  He seeks compensatory

and punitive damages as well as the suspension of the licenses of Dr. Burke and

Defendant Senko.

Various motions presently are before the court, including motions to dismiss

filed on behalf of Defendant Senko (Doc. 22) and Defendants Tennis, Ellers, and

Dobson[1] (Doc. 25); Plaintiff's motion for leave to file an amended complaint (Doc.

44); and two motions for appointment of counsel (Docs. 37, 51).  For the reasons set

forth below, the motions to dismiss will be granted; the motion for leave to file an

amended complaint will be denied as futile; and the motions to appoint counsel will

be denied as moot.


I.    **Background**

A.    **Allegations of Complaint**

On January 15, 2007, Dr. Burke was deliberately indifferent to Plaintiff's

psychiatric needs and caused him to be placed in a hard cell.  (Doc. 15 at 2 ¶ 1.)  He

repeatedly denied Plaintiff proper care for severe anxiety and panic attacks after

numerous recommendations by an unidentified physician's assistant.  (*Id.*)  Because

Dr. Burke neglected to give him medication for blood pressure, Plaintiff suffered

---

[1]On February 15, 2008, Dr. Burke's motion to dismiss was granted as
unopposed, (Doc. 34) and he was terminated as a party to this action.

kidney pain and mental anguish.  (*Id.* ¶ 2.)  On January 16, 2007 at 3:00 a.m.,

emergency team members came to Plaintiff's cell to give him medicine and placed

him on call to be seen by a doctor in the morning.  (*Id.*)  On January 17, 2007,

Plaintiff filed a grievance regarding his medical treatment and his intent to file a law

suit in federal court.  (*Id.* at 3 ¶ 3.)

On January 19, 2007, Plaintiff became disoriented while in the medical waiting

area.  (*Id.*)  An unidentified physician's assistant told Plaintiff to lie down until Dr.

Burke examined him.  (*Id.*)  Defendant Dobson wrote a misconduct report against

Plaintiff for lying down in the medical waiting area and for refusing to sit up when

ordered.  (*Id.* ¶ 4.)  Plaintiff told Defendant Dobson that he was sick.  (*Id.*)  The

misconduct report was the first retaliatory strike against Plaintiff for threatening to

file a law suit.  (*Id.* ¶ 6.)

On January 20, 2007, Plaintiff saw a jail sergeant who was working in the

medical area on the day Plaintiff was placed in a hard cell, and he told Plaintiff that

"they" were out to get him put in "the hole."  (*Id.* ¶ 5.)  The sergeant would not say

who "they" were, but inferred that he meant the "high brass."  (*Id.*)  A property officer

remarked to Plaintiff, "You're the one who likes to write guards up!!"  (*Id.* ¶ 7.)

Thereafter, medical personnel were "hostile" to Plaintiff.  (*Id.* ¶ 8.)  On March

15, 2007, Plaintiff was at sick call for severe rectal bleeding, but was not seen by a

physician's assistant because of an earlier lock down.  (*Id.* ¶ 9.)  Plaintiff was told to

come back the next day.  (*Id.*)  However, Plaintiff was not seen the next day, even

after his counselor called the medical unit.  (*Id.* ¶ 10.)  A misconduct report was filed

against Plaintiff for refusing to go to work even though DOC policy states that

inmates are to remain in their cells until they are seen by medical staff.  (*Id.*)  Because

it was the weekend, Plaintiff had to wait four more days to see medical staff.  (*Id.* ¶

11.)  An unidentified P.A. examined Plaintiff and gave him medicine.  (*Id.*)  Plaintiff

was treated harshly because of his previously filed grievances.  (*Id.* ¶ 12.)

As a result of a guilty finding on the misconduct charges filed against Plaintiff

for refusing to go to work, he was not released on parole on April 16, 2007 as he had

anticipated.  (*Id.* at 4 ¶ 13.)  Plaintiff did not get any relief as a result of appeals to the

warden.  (*Id.* ¶ 14.)

On August 1, 2007, Defendant Senko was hostile to Plaintiff at sick call.  (Doc.

15 at 4 ¶ 15.)  When Plaintiff told her that he was going to file a grievance against

her, she told him to leave the medical area.[2]  (*Id.*)  Plaintiff filed a grievance that day,

---

[2]In his August 1, 2007 grievance regarding this incident, Plaintiff did not allege
that he told Defendant Senko that he was going to file a grievance against her and that
she told him to leave.  (Doc. 30 at 23.)  Rather, he alleged that after Defendant Senko
clipped his ingrown toenail and he complained of pain, she told him that he had a low
tolerance for pain.  (*Id.*)  He further alleged that Dr. Simmons advised him to file a
grievance as Plaintiff was leaving the medical area.  (*Id.*)

and Defendant Senko fabricated two misconduct reports against Plaintiff to avert

them.  (*Id.* ¶ 16.)  As a result of Defendant Senko's false charges, Plaintiff was found

guilty of the misconduct charges, spent five months in the restricted housing unit

("RHU") , and lost his opportunity for parole a second time.  (*Id.* ¶ 17.)  Plaintiff

"informed" Defendants Tennis and Ellers, but was denied any relief.  (*Id.* ¶ 18.)  He

believes that he was retaliated against by prison staff "from the warden on down."

(*Id.* ¶ 19.)

     In retaliation, Plaintiff was forced to share a cell with a special needs patient in

the RHU, and a lieutenant there denied Plaintiff yard privileges and treated him in a

hostile manner because the lieutenant is a friend of Defendant Senko's.  (*Id.* ¶¶ 20,

21.)  Plaintiff has Human immunodeficiency virus ("HIV") and was "put back on HIV

medication due to his health deteriorating after 5 years of positive test results while

not needing any meds."  (*Id.* ¶ 22.)  He believes that his health was harmed "due to

the deliberate indifference and retaliation" of Defendants.  (*Id.* at 5 ¶ 23.)  Plaintiff

continues to be retaliated against, and at the time of filing his amended complaint, he

had just been informed that he was being transferred.[3]  (*Id.* ¶ 24.)

---

    [3]Plaintiff continues to be housed at SCI-Rockview.

### B.   **Procedural History**

On September 14, 2007, Plaintiff filed his original complaint. Service of the complaint was directed by Order dated September 19, 2007. (Doc. 7.)

On September 24 and 26, 2007, Plaintiff moved for leave to file an amended complaint. (Docs. 8, 9.) Because Plaintiff's complaint had not yet been served, the court denied Plaintiff's motions for leave to amend as moot and noted that Plaintiff still could file an amended complaint without leave of court. (Doc. 11.) Plaintiff filed an amended complaint on October 18, 2007. (Doc. 12.) However, because his amended complaint did not comply with Federal Rules of Civil Procedure 10(a) and 11(a), the Court provided Plaintiff with two blank § 1983 complaint forms and directed that, if he did not file an amended complaint, the court would proceed on his original complaint. (Doc. 13.) On November 9, 2007, Plaintiff filed an amended complaint (Doc. 15), which is the current complaint in this action.

Defendants filed three separate motions to dismiss. The first motion to dismiss (Doc. 20) was filed by Dr. Burke on December 31, 2007, along with a supporting brief (Doc. 21). Plaintiff did not timely file an opposition brief. Therefore, by Order dated January 24, 2008, the court directed Plaintiff to file his opposition to Dr. Burke's motion within fifteen days, or else the court would deem the motion unopposed. (Doc. 26.) Plaintiff failed to file an opposition brief, and thus by Order

dated February 15, 2008, the court granted Dr. Burke's motion to dismiss as unopposed and terminated Dr. Burke as a party to this action.  (Doc. 34.)

The second motion to dismiss (Doc. 22) was filed by Valerie Senko, P.A., on December 31, 2007.  (Doc. 22.)  Defendant Senko filed a supporting brief on January 15, 2008.  (Doc. 23.)  Plaintiff did not timely file an opposition brief, and therefore, by Order dated February 6, 2008, the court directed him to file an opposition brief within fifteen days, or else the court would deem the motion unopposed.  (Doc. 33.)

The third motion to dismiss (Doc. 25) was filed by the Corrections Defendants on January 18, 2008.  A supporting brief (Doc. 29) was filed on February 1, 2008. Because Plaintiff did not timely file his opposition, by Order dated February 25, 2008, the court directed him to do so within fifteen days or else the motion would be deemed unopposed.

On February 27, 2008, Plaintiff filed a motion to appoint counsel (Doc. 37). The next day, Plaintiff filed a letter (Doc. 36) with the court in which he requested more time to find an attorney and stated "I wish to drop the charges.  Please let the deft's attorneys know that I quit."  Because Plaintiff's intentions were unclear, by Order dated February 28, 2008, Plaintiff was directed to notify the court within ten days as to whether he sought voluntary dismissal of this action or to proceed.  (Doc.

7

40.)  By letter dated March 4, 2008, Plaintiff indicated that he wanted to proceed, but again requested counsel.   (Doc. 51.)

On March 4, 2008, Plaintiff filed his opposition (Docs. 41, 42) to the Corrections Defendants' motion to dismiss.  On March 6, 2008, Plaintiff filed his opposition to Defendant Senko's motion to dismiss.  (Docs. 49-50.)  On the same date, Plaintiff filed a motion for leave to file an amended complaint. (Doc. 44.)   The court now will turn to a discussion of the motions to dismiss filed on behalf of the Corrections Defendants and Defendant Senko.

## II.   **Motions to Dismiss**

### A.   **Legal Standard**

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Fair notice" in Rule 8(a)(2) "depends on the type of case — some complaints will require at least some factual allegations to make out a showing that the pleader is entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008)

(quotation omitted).  "A situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8."  *Id.*  A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief.  *Twombly*, 127 S. Ct. at 1965; *accord, e.g., Phillips*, 515 F.3d at 238-39; *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (The court is not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation.") (quotations and citations omitted)); *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005).

A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, — U.S. —, 127 S. Ct. 2197, 2200 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). *Accord Phillips*, 515 F.3d at 233.  If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss.  *Twombly*, 127 S. Ct. at 1965,

9

1974; *Phillips*, 515 F.3d at 234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Caroll*, 495 F.3d 62, 66 (3d Cir. 2007). This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Twombly*, 127 S. Ct. at 1965, *quoted in Phillips*, 515 F.3d at 234.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary

10

judgment.") (internal quotation omitted).  However, the court may not rely on other

parts of the record in making its decision.  *Jordan v. Fox, Rothschild, O'Brien &*

*Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

When presented with a *pro se* complaint, the court should construe the

complaint liberally and draw fair inferences from what is not alleged as well as from

what is alleged.  *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Youse v.*

*Carlucci,* 867 F. Supp. 317, 318 (E.D. Pa. 1994).  Such a complaint "must be held to

less stringent standards than formal pleadings drafted by lawyers."  *Estelle v. Gamble*,

429 U.S. 97, 106 (1976), *quoted in Erickson*, 127 S. Ct. at 2200.

Finally, in the Third Circuit, a court must grant leave to amend before

dismissing a civil rights complaint that is merely deficient.  *See, e.g., Fletcher-Harlee*

*Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston*

*v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113,

116-17 (3d Cir. 2000).  "Dismissal without leave to amend is justified only on the

grounds of bad faith, undue delay, prejudice, or futility."  *Alston v. Parker*, 363 F.3d

229, 236 (3d Cir. 2004).

### B.    Corrections Defendants' Motion to Dismiss

In their motion to dismiss, the Corrections Defendants seek dismissal of

Plaintiff's amended complaint on several grounds, one of which is dispositive.  The

11

Corrections Defendants argue that Plaintiff's complaint should be dismissed because he failed to exhaust administrative remedies with respect to his claims.  The court agrees for the reasons that follow.

The Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996) requires a prisoner to present his claims through an administrative grievance process before seeking redress in federal court.  The act specifically provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

A prisoner is required to exhaust administrative remedies as to any claim that arises in the prison setting regardless of any limitations on the type of relief that may be gained through the grievance process.  *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  "'[I]t is beyond the power of this court- or any other- to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy, or any other basis.'"  *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998).  The PLRA "completely precludes a futility

12

exception to its mandatory exhaustion requirement." *Id.* at 71.  The PLRA also

mandates that an inmate "properly" exhaust administrative remedies before filing suit

in federal court.  *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 2387 (2006).

"Proper exhaustion demands compliance with an agency's deadlines and other critical

procedural rules because no adjudicative system can function effectively without

imposing some orderly structure on the course of its proceedings." *Id.* at 2386.  "The

PLRA attempts to eliminate unwarranted federal-court interference with the

administration of prisons, and thus seeks to 'affor[d] corrections officials time and

opportunity to address complaints internally before allowing the initiation of a federal

case.'" *Id.* at 2387 (footnote omitted) (quoting *Nussle*, 534 U.S. at 525).  Failure to

substantially comply with procedural requirements of the applicable prison's

grievance system will result in a procedural default of the claim.  *Spruill v. Gillis*, 372

F.3d 218, 227-32 (3d Cir. 2004).

A prisoner does not have to allege in his complaint that he has exhausted

administrative remedies.  *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).  Failure to

exhaust available administrative remedies is an affirmative defense.  *Id.* at 295 n.8.

Therefore, it must be pleaded and proven by the defendants.  *Brown v. Croak*, 312

F.3d 109, 111 (3d Cir. 2002).  Moreover, a defendant may submit an "indisputably

authentic copy" of the administrative remedies to the court to be considered on a

13

motion to dismiss without converting it to a motion for summary judgment.  *Spruill*, 372 F.3d at 223 (citing *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003)).

An inmate may challenge an aspect of his or her confinement using the Department of Corrections ("DOC") grievance system, as provided for in the DOC Administrative Directive 804 ("DC-ADM 804").[4]  This Court frequently has stated the requirements of this policy.  *See Fortune v. Bitner*, 2006 WL 2796158, at *7 (M.D. Pa. Sept. 25, 2006) (Vanaskie, J.).  In the instant case, the Corrections Defendants have successfully pleaded and proven that Plaintiff has failed to exhaust his administrative remedies because he did not complete the administrative review process set forth in DC-ADM 804.  *See Brown*, 312 F.3d at 111.

Plaintiff filed five grievances relating to the claims raised in this action at the following numbers: 175678, 181878, 185885, 195829, and 199656.  (Doc. 30, Racovan  Decl. ¶ 6.)

---

[4]At the request of the Corrections Defendants' (Doc. 29 at 17 n.1), the court has taken judicial notice of the provisions set forth in DC-ADM 804, as shown on the DOC website at http://www.cor.state.pa.us.

Grievance 175678 related to Plaintiff's allegation that on January 15, 2007, the medical staff delayed in giving him sleeping medication and Dr. Burke did not prescribe the medication "that works for [him]."  (*Id.* ¶ 7.)

In grievance 181878, Plaintiff alleged that he experienced a three-day delay in receiving treatment for rectal bleeding after he initially reported to sick call on March 15, 2007.  (*Id.* ¶ 12.)

In grievance 185885, Plaintiff again raised the issue that he had been denied sleeping medication and also alleged that two days later, on January 17, 2007, a "retaliatory" misconduct report was issued against him for refusing to obey an order to sit up while waiting to be examined by Dr. Burke.  (*Id.* ¶ 16.)  He further alleged that two retaliatory misconduct reports had been issued against him and resulted in the rescission of his parole.  (*Id.*)

In grievance 195829, Plaintiff complained that on August 1, 2007, Defendant Senko was hostile to him because of a prior grievance he filed, but did not request any relief.  (*Id.* ¶ 19.)

Finally, in grievance 199656, Plaintiff relayed the details of his trip to sick call on September 4, 2007 for pain from a keloid on his arm, but did not request any relief.  (*Id.* ¶ 23.)

15

While all of these grievances were denied, Plaintiff's sole appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") was as to grievance 175678 relating to his claim that staff delayed in providing him with sleeping medication and that Dr. Burke did not give him the medication he wanted. (Doc. 31, Varner Decl. ¶¶ 6, 7, 9.) This appeal was rejected as untimely. (*Id.* ¶ 8.) Moreover, Plaintiff was advised that he should seek review of the issues in grievances 185885 and 195829 through the misconduct system. (Doc. 30 ¶¶ 17-22.) These grievances related to guilty findings on misconduct reports issued by Defendants Senko and Dobson. (*Id.*) Even so, Plaintiff failed to appeal those misconducts to the Program Review Committee for final review. (Doc. 32 ¶¶ 5, 12, 19, 23.)

Plaintiff admits that he did not timely file his appeal, but attributes the delay to "implied threats by staff members." (*See* Doc. 41-1 at 2.) He explains that he waited to file his appeal to appear disinterested in pursuing an appeal in order to secure his release on parole. (*See id.*) Plaintiff does not state that staff prevented him from filing an appeal such that administrative remedies were not available to him. Accordingly, Plaintiff failed to exhaust the claims raised in his amended complaint (Doc. 15), and the motion to dismiss filed on behalf of the Corrections Defendants (Doc. 25) will be granted.

### C.    Defendant Senko's Motion to Dismiss

In her motion to dismiss, Defendant Senko seeks dismissal on the basis that Plaintiff's amended complaint fails to state a claim against Senko for deliberate indifference to a serious medical need and for retaliation.[5]   The court agrees for the following reasons.

### 1.    Deliberate Indifference

In order to establish an Eighth Amendment claim against a defendant for inadequate medical care under § 1983, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions . . . that indicate deliberate indifference to that need." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).  *See also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if 'unnecessary and wanton infliction of pain' results as a consequence

---

[5]Senko did not argue that Plaintiff's complaint should be dismissed for failure to exhaust his administrative remedies.  Because exhaustion is an affirmative defense that must be raised, pleaded, and proven by the defendants, the court could not grant Senko's motion to dismiss on the basis of failure to exhaust even though it is apparent from the Corrections Defendants' motion to dismiss that Senko's motion could be granted on that basis. *See Brown*, 312 F.3d at 111; *Ray*, 285 F.3d at 295.

of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

Plaintiff has not alleged facts sufficient to establish a plausible deliberate indifference claim.  Specifically, he has not alleged sufficient facts to suggest a serious medical need or an act or omission by Senko that would demonstrate that she was deliberately indifferent to a serious medical need.  His only allegation against Defendant Senko in his amended complaint as to medical care is that, on August 1, 2007, Plaintiff was at sick call and Senko was "hostile" to him.[6]  (Doc. 15 at 4, ¶ 15.) Plaintiff does not state what his medical need was, and he does not state what Defendant Senko did or did not do with regard to providing him with medical treatment.  As such, he fails to make a claim of deliberate indifference against her.[7]

### 2.   Retaliation

---

[6]Plaintiff makes references to a "P.A." in other parts of his amended complaint, but does not state who the P.A. is.  (Doc. 15 at 2, ¶ 1; at 3, ¶¶ 9, 11.)  Even if his allegations are against Senko, they do not state any facts suggestive of a serious medical need or deliberate indifference.

[7]Plaintiff generally alleges that his health was harmed due to the deliberate indifference and retaliation by prison staff named in his suit.  (Doc. 15 at 5, ¶ 23.)  To the extent he attributes his need to resume HIV medication to the actions of any of Defendants, including Senko, his claim fails because he does not allege how their actions led to this occurrence.  (*See id.* at 4, ¶ 22.)

In order to state a retaliation claim under § 1983, Plaintiff must plead the existence of the following three elements: (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) that he was subjected to adverse actions by a state actor (here, a prison official); and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Anderson v. Davila*, 125 F.3d 148, 163 (3d Cir. 1997).

Plaintiff's claim fails because he does not allege facts suggesting that he engaged in constitutionally protected conduct.  He makes two allegations against Defendant Senko from which it may be inferred that he is alleging a retaliation claim against her.  The first is that, on August 1, 2007, when Plaintiff told Senko that he was filing a grievance against her, she told him to leave the medical department. (Doc. 15 at 4, ¶ 15.)  The second is that Defendant Senko "fabricated" two misconduct reports against Plaintiff "to avert the threatened grievance."  (*Id.* ¶ 16.) Plaintiff's allegation that Senko fabricated the charges suggests that he believes that she did so in retaliation for Plaintiff filing a grievance against her.

With regard to the first element that is needed to sustain a retaliation claim, it is well-settled that prison inmates do not have a constitutionally-protected right to a grievance procedure, and by extension, to file a grievance.  *See Jones v. North*

19

*Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 137-38 (1977) (Burger, C.J.,

concurring) ("I do not suggest that the [grievance] procedures are constitutionally

mandated").  While prisoners do have a constitutional right to seek redress of their

grievances from the government, that right is the right of access to the courts, and

such a right is not compromised by failure of the prison to address an inmate's

grievance.  *See Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del. 1995), *aff'd*. 74

F.3d 1226 (3d Cir. 1995) ("a state grievance procedure does not confer any

substantive constitutional right upon prison inmates") (citation omitted);  *Wilson v.*

*Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (same).  It follows that if Plaintiff does

not have a constitutionally-protected right to file a grievance, he has not established a

retaliation claim against Defendant Senko.  Therefore, the court will grant Defendant

Senko's motion to dismiss.


**III.   Plaintiff's Motion for Leave to Amend Complaint**

The court is mindful of the fact that denial of leave to amend before dismissing

a civil rights complaint that is merely deficient is justified only on grounds of "bad

faith, undue delay, prejudice or futility."  *See Alston*, 363 F.3d at 236.  Amendment of

the allegations in Plaintiff's complaint against the Corrections Defendants would be

futile because he has failed to exhaust his administrative remedies.  However, the

20

court will consider whether it should grant Plaintiff's motion for leave to amend with respect to his allegations against Defendant Senko.

In general, a party "may amend its pleading once as a matter of course before being served with a responsive pleading . . ." Fed. R. Civ. P. 15(a)(1). After a responsive pleading has been served, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Based upon the following analysis of Plaintiff's allegations against Defendant Senko in his proposed amended complaint, it is apparent that justice does not require granting him leave to amend his complaint.

### A.     **Deliberate Indifference**

In his proposed amended complaint, Plaintiff fails to allege a plausible deliberate indifference claim against Defendant Senko. He adds the following new allegation against Defendant Senko with respect to medical care he received: on January 19, 2007, when he was at the medical department, Defendant Senko took his blood pressure, and it was "sky high." (Doc. 45 at 2.) Senko remarked "for the 4th time in the past week, I need medicine from Dr. Burke for severe anxiety." (*Id.*) Plaintiff does not allege that Defendant Senko was deliberately indifferent to his

medical needs.  To the contrary, he admits that she thought he should receive medical care and instructed him to lie down in the waiting area until he was examined.  (*Id.*)

Plaintiff maintains his allegation that Defendant Senko was "hostile" to him at sick call on August 1, 2007.  (*Id.* at 3.)  However, he adds the allegation that he was "offended that she inferred he was a sissy for yelping in pain while digging at deformed toenail" and "he told her she was unprofessional."  (*Id.*)  He further alleges that Defendant Senko told him to leave, and he did, but threatened another grievance. (*Id.*)  Plaintiff does not allege that he had a serious medical need for which Senko failed to provide treatment.  To the contrary, he admits that she was providing medical treatment and merely complains about her remarks to him.

## B.    Retaliation

Plaintiff attempts to assert a retaliation claim against Defendant Senko in his proposed amended complaint as follows:

> She, Senko, deliberately falsified a misconduct and said plaintiff called her a bitch.  When Plaintiff was waiting to see the captain about her lies, she was walking by plaintiff with intern Desiree Mingear, and plaintiff said to Senko, I'm not letting you get away with lying on this write up. I'm seeing the captain.  PA Senko then went and falsified another misconduct and said Plaintiff assaulted her with papers.

(*Id.*)  Plaintiff's attempt to assert a retaliation claim in his proposed amended complaint fails for the same reason that his attempt failed in his amended complaint:

he has no constitutionally-protected right to file a grievance. *See Jones*, 433 U.S. at 137-38; *Wilson*, 971 F. Supp. at 947.  As such, he cannot succeed on a retaliation claim against Senko by alleging that she retaliated against him for filing a grievance.

Following an examination of Plaintiff's proposed amended complaint, it is apparent that granting leave to amend as to Defendant Senko would be futile, particularly where Plaintiff already has amended his complaint on more than one occasion.[8]  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Alston*, 363 F.3d at 236.

## IV.   Conclusion

For the foregoing reasons, Defendants' motions to dismiss (Docs. 22, 25) will be granted.  Plaintiff's motion for leave to file an amended complaint (Doc. 44) will be denied as futile.  Finally, Plaintiff's motions to appoint counsel (Docs. 37, 51) will

---

[8]It also would be futile to grant Plaintiff leave to amend as to his proposed claims against Dr. Burke and under the Americans With Disabilities Act ("ADA").

Plaintiff seeks to bring Dr. Burke back in as a party to the action even though Dr. Burke was dismissed as a party when Plaintiff failed to oppose his motion to dismiss.  Even if Dr. Burke still was a party to this action, Plaintiff does not allege sufficient facts in his proposed amended complaint to establish that Dr. Burke had knowledge of a substantial risk of serious harm.

Plaintiff also seeks to add a claim under the ADA.  However, he fails to allege any facts with respect to this claim.  He merely states at the end of his proposed amended complaint that there has been a "violation" of the ADA.  (*See* Doc. 45 at 4.) This statement is insufficient to allege a claim under the ADA.

be denied as moot.  In light of the court's disposition of the motions to dismiss,

Plaintiff's motions for appointment of counsel will be denied as moot.

An appropriate Order will issue.


                                        s/Sylvia H. Rambo
                                        Sylvia H. Rambo
                                        United States District Judge

Dated: April 23, 2008.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL CONNOLLY,                    :
                                     :
          Plaintiff                  :
                                     :     CIVIL NO. 1:CV-07-1681
                                     :
     v.                              :
                                     :     (Judge Rambo)
                                     :
Warden FRANKLIN TENNIS, *et al.*,    :
                                     :
          Defendants                 :

## ORDER

In accordance with the foregoing memorandum, **IT IS HEREBY ORDERED THAT:**

1.  The motion to dismiss (Doc. 25) filed on behalf of Defendants Tennis, Ellers, and Dobson is **GRANTED**.

2.  The motion to dismiss (Doc. 22) filed on behalf of Defendant Senko is **GRANTED**.

3.  Plaintiff's motion for leave to file an amended complaint (Doc. 44) is **DENIED**.

4.  Plaintiff's motions to appoint counsel (Docs. 37, 51) are **DENIED** as moot.

5.  The Clerk of Court is directed to close this case.


                                    s/Sylvia H. Rambo
                                    Sylvia H. Rambo
                                    United States District Judge



Dated: April 23, 2008.